**STMT**
**Christopher G. Gellner, P.C.**
Christopher G. Gellner, Esq.
528 South Casino Center Boulevard, Suite 305
Las Vegas, Nevada 89101
(702) 386-9393
Attorney for Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **VIRGIN RIVER 140, LLC,** | Case No.: BK-S-13-14594-LED<br>Chapter 11 |
| Debtor. | Date of Hearing: May 20, 2014<br>Time of Hearing: 10:30 a.m. |

## PROPOSED DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION

COMES NOW Virgin River 140, LLC (hereinafter referred to as "Debtor"), and files its Disclosure Statement pursuant to 11 USC §112.

## TABLE OF CONTENTS

| ARTICLE | TOPIC: | PAGE |
|---|---|---|
| I. | Introduction and Purpose of Disclosure Statement | 1-2 |
| II. | Nature of Chapter 11 Reorganization Proceedings and Plan Voting | 3-6 |
| III. | Description of The Debtor and The Reasons For The Bankruptcy | 6-7 |
| IV. | The Reorganization Plan and How It Will Be Funded | 7-9 |
| V. | Description and Status of Chapter 11 Proceedings, and Future projections | 9-10 |
| | A. Summary of Financial Assets and Liabilities Prior to Filing | 10 |
| | Legal Proceedings | 11 |
| | B. Summary of Financial Activities during Bankruptcy and Future Projections | 10 |
| | D. Debtor's Compensation | 10 |
| | E. Control of Debtor's Assets following Confirmation | 10 |
| VI | Present Financial Condition | 10-12 |
| | A. Assets | 10 |
| | B. Liabilities | 11 |
| | C. Valuation | 11 |
| | D. Liquidation Value | 11 |

| | | | |
|---|---|---|---|
| VII | Insider and Affiliate Claims | | 12 |
| VIII | Summary of Plan | | 12 |
| IX | Conclusion | | 13-14 |

## I.
## INTRODUCTION AND PURPOSE OF DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to provide adequate information of a kind, and in sufficient detail as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment concerning the Plan.

By way of introduction, on May 24, 2013, the Debtor, Virgin River 140, LLC, filed a Petition for reorganization under Chapter 11 of the Bankruptcy Code. At the time it filed its Petition, Virgin River, 140, LLC was a Nevada limited liability company formed on August 1, 2005 to take title to140 acres of undeveloped real property in Bunkerville, Clark County, Nevada. The Debtor was hit hard by the real estate collapse during the great recession and had to file for bankruptcy protection in order to prevent the foreclosure of its real property by the holder of the first deed of trust thereon, DRB Holdings, formerly known as David R .Belding, that scheduled the foreclosure sale for May 24, 2013.

The Debtor's bankruptcy filing was caused by deteriorating economic conditions in Las Vegas and throughout the country that adversely affected the value of his investment and rental properties. Schedules of Assets and Liabilities and a Statement of Financial Affairs were filed by the Debtor on May 24, 2013 at the time he filed his Chapter 11 Bankruptcy Petition. Since filing bankruptcy, the Debtor has reduced his expenses and waited for the real estate market to improve. The market has improved significantly the last several months and the Debtor believes that he can implement a successful reorganization at this time.

///

///

///

Pursuant to Chapter 11, the Debtor has formulated a Plan of Reorganization and prepared this proposed Disclosure Statement setting forth all material facts which the Debtor believes has a bearing on this proceeding. A disclosure statement is a pre-condition to soliciting creditors for the acceptance of a plan of reorganization. The purpose of a disclosure statement is to provide adequate information of a kind, and in sufficient detail, as far as reasonably practicable in light of the nature and history of the Debtor and the condition of his books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment concerning the Plan. It is anticipated that this Disclosure Statement will be approved and the Plan confirmed by the Court in the near future.

## II.
## NATURE OF CHAPTER 11 REORGANIZATION PROCEEDINGS AND PLAN VOTING

Chapter 11 of the Bankruptcy Code is remedial statute designed to affect the rehabilitation and reorganization of financially-distressed individuals and businesses. The aim of a reorganization proceeding includes the following:

A. Preservation of the Debtor's property and any ongoing concern of its business and operations;

B. Avoidance of a forced and destructive liquidation of the Debtor's assets; the protection of creditors, both secured and unsecured;

C. The restructuring of the debts of the Debtor and the finances of the Debtor such as would enable them to retain those assets necessary to rehabilitate their finances, and at the same time, produce the greatest recovery for their creditors.

The formulation and confirmation of a plan of reorganization is the principal function of a Chapter 11 case. Such a plan normally includes provisions for: (a) altering and modifying rights of creditors: (b) dealing with the property of the Debtor; (c) paying costs and expenses of administering the Chapter 11 case; and (d) execution of the plan.

The plan may affect the interests of all parties and creditors, reject executory contracts, and provide for the prosecution or settlement of claims belonging to the debtor. In order to be confirmed by the Court, the Code requires that there be a finding that the plan was approved by each class of creditors or that it does not discriminate unfairly, and is fair and equitable with respect to each dissenting class of creditors. In order for a plan to be "fair and equitable," it must comply with the so-called absolute priority rule. The absolute priority rule requires that beginning with the most senior rank of claims of creditors against the Debtor, each class in descending rank or priority must receive full and complete compensation before inferior or junior classes may participate in the distribution. Except that in a case in which the Debtor is an individual, as in this case, the Debtor may retain property under the Plan if he is current in any domestic support obligation that first became payable after the Petition was filed. Moreover, in a case in which the Debtor is an individual and the holder of an allowed unsecured claim objects to confirmation of the plan, the Court must find that (A) the value as of the effective date of the Plan, of the property to be distributed under the Plan on account of such claim is not less than the amount of such claim; or (B) the value of the property to be distributed under the Plan is not less than the projected disposable income of the Debtor to be received during the 5-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer.

With respect to secured claims, for a plan to be fair and equitable, it must provide that the holders of such claims retain the liens securing their claims to the extent of the allowed amount of such claims; and that each secured creditor receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the Plan, which is at least the value of such creditor's interest in the secured property. Consequently, if the Debtor proposes to change the terms of a secured creditor's loan, the secured creditor must receive a market-interest rate on the secured portion of its loan for the plan to be confirmed.

///

The plan in question must be accepted by the affirmative vote of a majority of creditors holding two-thirds of the amount of claims filed and allowed in each class, unless adequate provisions are made for the classes of dissenting creditors. The creditors in Classes I, II and III do not vote on the Plan because they receive the treatment specified in 11 USC 1129(a)(9) of the Code. In order to fully understand how a plan is confirmed, each individual Creditor should check with his or her own attorney and receive full advice on the inner-workings of Sections 507(a), 1111, 1122, 1123, 1124, 1126, 1129 of the Code. THE FOREGOING IS A BRIEF SUMMARY OF THE HIGHLIGHTS OF A PLAN AND CONFIRMATION OF SUCH, AND THIS FOREGOING SUMMARY SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. CREDITORS ARE URGED TO CONSULT WITH THEIR OWN COUNSEL BEFORE MAKING ANY DECISIONS ON THE PLAN FILED HEREIN.

The Debtor will receive a discharge of all of its debts after confirmation of the plan. At anytime before confirmation, the Debtor may modify the Plan. However, it may not modify such Plan so that such Plan as modified fails to meets the requirements of the Bankruptcy Code. After the Debtor files a Modification of such Plan with the Court, the Plan as modified becomes the Plan.

After confirmation, the proponent of a Plan or the reorganized Debtor may modify such plan at anytime and before substantial consummation of such plan, but may not modify such plan so that the plan as modified fails to meets the requirements of §s1122 and 1123 of the Bankruptcy Code. The Plan as modified becomes the plan only if circumstances warrant such modification, and the Court, after notice of hearing, confirms that the plan as modified, under §1129 of the Bankruptcy Code. Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or reject it, as the case may be, such plan as modified, unless, within the time fixed by the Court, such holder changes such holder's previous acceptance or rejection.

///

///

The instant Debtor was suited for, and in dire need of, the broad protection afforded by Chapter 11. The filing of the Bankruptcy allowed the Debtor time to formulate a plan to pay creditors. The Debtor may not solicit approval and acceptance of his Plan from creditors until there has been judicial approval of this Disclosure Statement.

## III.
## DESCRIPTION OF THE DEBTOR AND THE REASONS FOR THE BANKRUPTCY

Virgin River 140, LLC is a Nevada limited liability company that was formed on or around August 1, 2005 to engage in the real estate and investment development business. Specifically, it was formed to take title to an approximately 140-acre parcel of undeveloped real property in Bunkerville, Nevada, which is in northern Clark County near the Utah border. The property in question is adjacent to the Virgin River.

Before the Debtor took title to the property, the former owner, Rancho Riverside, LLC, obtained a loan in the amount of $2,500,000.00 from David R. Belding to purchase the property. When Virgin River 140, LLC agreed to purchase the property from Rancho Riverside, LLC, Rancho Riverside assigned the Note and the Deed of Trust in favor of Mr. Belding to the Debtor. The secured Promissory Note was amended by a First Amendment to secured Promissory Note and Assumption Agreement on February 1, 2007 and, at that time, the Debtor assumed full liability for paying the Note, and its members guaranteed the payment of the Note.

At the time of the purchase of the Virgin River property, real estate values in Clark County, Nevada and in and around Mesquite and the northern part of the county were appreciating rapidly. However, two years later, and before the Debtor could develop or sell the property, the market started to become soft and property values depreciated rapidly thereafter as the great recession took hold.

In early 2013, Secured Creditor, David R. Belding, initiated foreclosure proceedings on the $2,500.00 Promissory Note and Deed of Trust and scheduled a foreclosure sale for May 28, 2013. On May 24, 2013, the Debtor filed the above-entitled Chapter 11 bankruptcy case. On or around the same date, Belding assigned his Note and Deed of Trust to DRB Holdings, LLC,

6

and entity that the Debtor assumes is wholly owned by Mr. Belding.

The Debtor's Schedules list the value of the property at $2 million on the date the Petition was filed. Since then, it has increased in value to about $3 million in the Debtor's opinion, as the real estate market has come back somewhat over the past two years. DRB Holdings, LLC, formerly Mr. Belding filed a Proof of Claim on September 25, 2013 which claims that $4,823,870.03 were owed on the Note secured by the Deed of Trust on the date the bankruptcy was filed. On April 17, 2014, DRB Holdings, LLC filed a Motion to Lift Stay that claims that $5,380,609.38 are owed on the Note. In the Motion to Lift Stay, which will be heard by the Bankruptcy Court on May 20, 2014, Moving Creditor is seeking authority from the Court to resume foreclosure proceedings. The Debtor will strongly resist this Motion, as it is now filing a Reorganization Plan with the Court that will protect its investment of over $1 million in the property and pay creditors in a fair manner.

## IV.
## THE REORGANIZATION PLAN AND HOW IT WILL BE FUNDED

The Debtor's Reorganization Plan consists of 11 classes which are as follows:

Class I are administrative creditors, which consists of all expenses of administration of this Chapter 11 case incurred by the Debtor during the Bankruptcy including any outstanding fees to the U.S. Trustee under 28 USC §1930. Administrative creditors will be paid in full after confirmation and on the date of distribution, as required by the Bankruptcy Code. Class I is a non-voting class.

Class II consists of current operation creditors, which consists of debts incurred by the Debtor in the ordinary course of business after filing Bankruptcy which are not delinquent. Class II is a non-voting class. There are no current operation creditors, to the Debtor's knowledge.

Class III consists of priority-tax claims of the Internal Revenue Service and other taxing authorities to the extent that they are entitled to priority. To the Debtor's knowledge, there are no Class III creditors. This is also a non-voting class.

Class IV consists of secured creditors. This class consists of Classes IV(A) and IV(B). Class IV(A) consists of the secured portion of the First Deed of Trust of the 140 acres of the undeveloped real property on the banks of the Virgin River in Bunkerville, Nevada with an approximately balance of $4,823,870.03 as of the Petition date, which is held by DRB Holdings, LLC, formerly David R. Belding. Class IV(A) consists of the secured portion of this claim which is $3 Million the value of the property. The secured portion of the loan will be made into a 10-year mortgage, with a fixed interest rate of 5.25% per annum,, payable at the rate $7,979.43 per month, interest only, beginning on the effective date and continuing on the same date each and every month thereafter for a 120 months, with a balloon payment of the interest on the 121st month. The Debtor will directly pay real estate taxes to the Clark County Treasurer and casualty and liability insurance to its insurance carrier. Unsecured portions of the claim, or $1,823,870.03 shall be paid in Class VI. The Creditor in Class IV(A) is impaired.

Class IV(B) consists of the secured claim of the delinquent real property taxes of the Virgin River property owed to the Clark County Treasurer in the amount of $19,301.02. This claim shall be paid in monthly payments of $804.21 plus interest thereon of 5.25%, over 24 months. This Creditor unimpaired.

Class V is the unsecured creditor class consisting of claims of two creditors who previously provided services to the Debtor: Jerry Metheny of Sandy Stuart Realty for administrative services/bookkeeping ($20,000.00) and Kathy Arrington for management services and costs advances ($10,000.00). This class of creditors shall be paid 10% of its allowed claims without interest over one year, or $3,000.00 at the rate of $250.00 per month. This class is impaired.

Class VI is the unsecured portion of the First Deed of Trust claim of DRB Holdings, LLC, formerly David R. Belding, in the amount of $,823,870.03. 5% of this claim shall be paid over 5 years, without interest, or $91,193,50. will be paid at the rate of $1,519.89 per month.

The Reorganization Plan will be funded by the Debtor bringing in investors to purchase at least 50% of the ownership of the Virgin River land and provide sufficient funds for the

development of the land, probably as an RV park, and to make creditors as development proceeds. Until the investor is firmed up, the members of the LLC shall make additional capital contributions each month to make the payments required by the Reorganization Plan. If an investor is not firmed up within one year from the effective date of the Debtor's Reorganization, the Debtor will begin marketing the property for sale.

## V.
## DESCRIPTION AND STATUS OF CHAPTER 11 PROCEEDINGS AND FUTURE PROJECTIONS

### A. Summary of Financial Assets and Liabilities Prior to Filing

The Statement of Financial Affairs and Schedules of the Debtor which have previously been filed in this Bankruptcy case contain an itemization of its assets and liabilities prior to filing. The Debtor's only assets are the 140-acre parcel (which is actually two parcels) of unimproved vacant property in Bunkerville, Nevada along the Virgin River which had a value of approximately $2 million at the time of filing of the Petition, but which is worth $3 million at the present time. The Debtor also had $400.00 in cash, as indicated by Schedule B.

As far as liabilities are concerned, the Debtor's only liability at the time it filed bankruptcy was the First Deed of Trust loan on the Virgin River Property, which Secured Creditor, DRB Holdings, LLC claims as $4,823,870.03 on the date of filing according the Proof of Claim filed with the Court filed on September 25, 2013.

### B. Legal Proceedings

The Debtor did not have any pending legal proceedings on the date this Bankruptcy case was filed, other than the foreclosure proceeding which instigated the filing of the bankruptcy case. Just recently, DRB Holdings, LLC, formerly Mr. Belding, filed a Motion to Lift Stay to in which it is attempting to obtain Court Authority to foreclose on the Virgin River property, which will be heard by the Bankruptcy Court on May 20, 2014.

### C. Summary of Financial Activities During Bankruptcy Proceedings And Future Projections

///

The Debtor has had no financial proceedings, or any income, since the bankruptcy case was filed. Members of the LLC have been making capital contributions to it in order to pay the U.S. Trustee's Quarterly Fees.

The members of the LLC have expressed an intent to make whatever capital contributions are needed on a monthly basis to handle the debt service of a confirmed plan which will be approximately $10,600.00 the first year after confirmation and then after the Clark County Treasurer is paid in full after the first year, approximately $9,769.89 per month. The members have significant means and should be able to make these payments without a problem. Once an investor is firmed to make a capital contribution of $1 million or more to purchase an interest in the property, and to develop it, the money contributed will be additional funds to make the payments.

D. Debtor's Compensation

N/a.

E. Control Of Debtor's Assets Following Confirmation

Following confirmation, the Debtor shall remain in control of its assets listed in the Petition and Schedules.

## VI.
## PRESENT FINANCIAL CONDITION

A. Assets

The Debtor's assets are exactly the same today as they were on the date the bankruptcy Petition was filed in May, 2013. The Debtor owns the Virgin River property and has $400.00 in cash. However, the Virgin River Property has increased in value and is now worth $3 Million rather $2 million at the time of the bankruptcy case was filed.

B. Liabilities

The liabilities of the Debtor are exactly the same now as they were on the date the bankruptcy Petition was filed. The Debtor has one major claim owed to DRB Holdings, LLC for the secured portion of $3 million and unsecured portion of $1,823,870.03. The Debtor also

owes $19,000.00 in delinquent property taxes to the Clark County Treasurer and $30,000.00 to two unsecured creditors   No debts have been incurred during the pendency of the Chapter 11 bankruptcy case, except Quarterly Trustee's Fees which have been paid by capital contributions from the members to the LLC.

   C. <u>Valuation</u>   The Debtor believes that its valuation of the Virgin River real property of $3 million is reasonable under the present real estate market conditions in Clark County and the Mesquite/Bunkerville areas.

   D. <u>Liquidation Value</u>

  In the event of any adjudication into Chapter 7 liquidation proceedings, it would suggest to general unsecured creditors (Class V) that he will receive much less than what the Debtor is offering to pay them.

  In the event that the Debtor is adjudicated into a Chapter 7 Bankruptcy proceeding, and if his assets are sold, the Chapter 7 Trustee will be required to pay from funds available the following expenses and/or debts in the following rank and order:

  1. First, all secured claims validly secured by the property would have to be paid from the sale's proceeds.

  2. Thereafter, administrative claims would have to be paid in full.  These claims primarily consist of Trustee's fees, attorney's fees, and accountant fees, as well as the costs of associated with liquidating or selling assets, such as advertising, storage and auction expenses. Currently, there are no unpaid fees owed to Trustees, attorneys and accountants. Administrative expenses and liquidation fees often amount to between 10 and 25% of the value of the property liquidated.

  3. Thereafter, priority debts, particularly taxes owing at filing would have to be paid in full.

  4. Thereafter, unsecured claims would receive the residual equity from the proceeds of the property sold or administered, which in this case would be zero. Remember, the only non-exempt assets in this case are worth only approximately $23,750.00.

Administrative expenses would eat this sum up very quickly. Under the Reorganization Plan, the Debtor proposes to pay unsecured creditors 10% of their allowed claims or approximately $36,966.72.

Administrative expenses and claims can only be fixed and determined by the Bankruptcy Court, and the Debtor would recommend that each creditor obtain the advise of his or her own individual attorney as to the probability and amount of any administrative claims that may be paid in preference to claims of general, unsecured creditors and in making an evaluation as to whether a reorganization effort would be preferable to a liquidation of the assets of the Debtor in a Chapter 7 Bankruptcy proceeding.

Administrative claims may have a significant bearing on the decision of each individual creditor in voting in favor or against the Plan of Reorganization. The Debtor would suggest to creditors that administrative claims will be significantly less or non-existent if the Plan of Reorganization is confirmed, as compared to a Chapter 7 liquidation proceeding.

## VII.
## INSIDER AND AFFILIATE CLAIMS

Neither the Debtor nor any entities in which they have an ownership interest are creditors in this case and will not receive any monies amounts distributed under the Plan.

## VIII.
## SUMMARY OF PLAN

The Debtor has proposed a Plan which consists of the Debtor refinancing the Virgin River property to secured and unsecured portions, based on current values. The new secured claim on the property will be $3 million and will paid interest only over 10 years at a monthly payment of $7,970.43, with a balloon for all principal at the end of the 10 years. The unsecured portion of the First Deed of Trust claim in the amount of $1,823,870.03 shall be paid at a 5%, or $91,193.50, with monthly payments of $1,519.89. The $30,000.00 owed to unsecured creditors, will be paid at a 10% rate of $250.00 per month over one year. The Clark County Treasurer shall be paid it secured claim of $19,301.02 in monthly payments of $804.21, plus interest of 5.25%, over 24 months.

If the Plan is not confirmed, and DRB Holdings, LLC, formerly David R. Belding, are allowed to foreclose of the property, the Secured Creditors, including Mr. Belding, will be paid nothing.

The Plan, if confirmed, will be binding upon the Debtor and his Creditors and all parties in interest. All creditors are urged to read the Plan and the Disclosure Statement carefully

## IX.
## CONCLUSION

Based on the above, the Debtor believes that his Plan is in the creditors' best interests, in that the Secured Creditor will receive a new secured claim equivalent to the value of the Virgin River real property, which will be paid over 10 years at a market interest rate. The unsecured portion of DRB Holdings' claim shall be paid at a 5% rate, without interest, over 5 years. DRB will receive $91,193.50 more through the Reorganization Plan than it would receive on its unsecured claim if it foreclosed. Moreover, under a foreclosure scenario, it would probably only receive $2 million or less for the property, because of the distressed nature of the sale. Also, under the Debtor's Plan, the Clark County Treasurer shall be brought current on its secured claim in two years, and the two general unsecured creditors shall be paid 10% of their claims over two years.

Without this bankruptcy, the Secured Creditor would end up getting the property back and end up selling it to a third party at a value and with financing that it would be less favorable than what it is proposed by the Debtor. Furthermore, unsecured creditors can expect to receive nothing if the Reorganization Plan is not confirmed.

EVERY ATTEMPT HAS BEEN MADE TO PROVIDE ACCURATE FINANCIAL INFORMATION IN THIS STATEMENT. HOWEVER, THE INFORMATION HAS NOT BEEN SUBJECT TO CERTIFIED AUDIT. NO REPRESENTATIONS CONCERNING THE DEBTOR, PARTICULARLY AS TO HIS FUTURE BUSINESS OPERATIONS OR THE VALUE OF HIS ASSETS, ARE AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

      This Disclosure Statement does not contain all of the information on file with the Bankruptcy Court. For further information with respect to the Debtor and this matter, reference is made to the Court file, which includes all of the pleadings, papers, petitions, schedules, financial and status reports and other documents filed by the Debtor with the Court. Finally, the purpose of this Disclosure Statement is to provide adequate information to creditors pursuant to the provisions of the Bankruptcy Code. Each creditor should consult with his, her or its own legal counsel, tax or financial advisor to the extent necessary to fully understand the effect of confirmation of the Plan or failure of confirmation may have on their particular interest. The Debtor hereby solicits approval of the Plan by its creditors. The Debtor urges each creditor to mark the "accepts" box on the enclosed ballot and return the ballot to the Debtor's counsel, Christopher G. Gellner, Esq. of 528 South Casino Center Boulevard, Suite 305, Las Vegas, Nevada 89101, Telephone: (702) 386 - 9393; Fax: (702) 386 - 7997 and email: cggellner@gmail.com or cggellner@earthlink.net., who will file it with the Court.

      DATED: This 18th day of April, 2014.

                                         Charles E. Weiner, Managing Member
                                         of the Virgin River 140, LLC

Submitted by:

CHRISTOPHER G. GELLNER, P.C.

s/s Christopher G. Gellner, Esq.
CHRISTOPHER G. GELLNER, ESQ.
Nevada State Bar No.: 002556
528 South Casino Center Boulevard, Suite 305
Las Vegas, NV 89101
(702) 386-9393
Attorney for Debtor In Possession